# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

———————————

VERONICA RAMIREZ,

       Plaintiff,

vs.                                      Case No. 20-cv-00824 KWR/DLM

OFFICER JOSEPH J. MARTINEZ,
WARDEN MARIANNA VIGIL,
EBETH CRUZ-MARTINEZ, and
ROBERT GONZALES, *in their individual
capacities*,

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendant Gonzales' Motion for Summary Judgment **(Doc. 101)**. Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant Gonzales' motion is well-taken in part and, therefore, is **GRANTED IN PART** and **DENIED IN PART.**

Plaintiff asserts she was sexually assaulted by Defendant Martinez while incarcerated at Springer Correctional Center. As relevant here, she asserts that she told Defendant Gonzales that Defendant Martinez was sexually assaulting her. She asserts Defendant Gonzales took no action, and Defendant Martinez continued to sexually assault her for months. Plaintiff argues Defendant Gonzales was deliberately indifferent to a substantial risk of harm, violating the Eighth Amendment. Defendant Gonzales seeks summary judgment on this claim, asserting qualified immunity. The Court concludes there is a genuine dispute of material fact, and Defendant is not entitled to qualified immunity as to the Eighth Amendment claim (Count I).

Plaintiff also asserts that Defendant Gonzales retaliated against her for filing a grievance related to the sexual assault, violating the First Amendment.  The Court concludes that Defendant Gonzales is entitled to qualified immunity as to the First Amendment retaliation claim (Count II).

## BACKGROUND

On August 17, 2020, Plaintiff filed a complaint asserting the following claims:

Count I: Cruel and unusual punishment in violation of the Eighth Amendment (all

    defendants)

Count II: Retaliation in violation of the First Amendment (Defendant Gonzales)

Count III: Intentional Tort claims (Defendant Martinez); and

Count IV: Negligent Operation or Maintenance of a Public Facility (against Defendants

    Vigil, Cruz-Martinez, and Gonzales)

Count IV was dismissed without prejudice.  Docs. 34, 87. This motion concerns Counts I and II.

## LEGAL STANDARD

A motion for summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). As the Tenth Circuit has explained, "mere assertions and conjecture are not enough to survive summary judgment." *York v. AT&T*, 95 F.3d 948, 955 (10th Cir. 1996).  To avoid summary judgment, a party "must produce specific facts showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact

claimed to be disputed." *Branson v. Price River Coal Co.*, 853 F.2d 768, 771-72 (10th Cir. 1988) (quotation marks and citations omitted).

"A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017) (quotation marks and citation omitted).

## UNDISPUTED MATERIAL FACTS

For the qualified immunity analysis, the Court generally considers Plaintiff's version of the facts which are properly supported in the record, and facts which she did not dispute. *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018) (internal quotations omitted).

Defendant Robert Gonzales was the chief of security at the Springer Correctional Center ("SCC") and was responsible for overseeing all security operations at the facility, any issues with correctional officers, evaluations of all correctional officers and the security of the inmates. Doc. 104 at 8, UMF 1; Doc. 108 at 5 (undisputed). Defendant Gonzales was responsible for overseeing situations involving misconduct between inmates and staff. Doc. 104 at 8, UMF 2; Doc. 108 at 5 (undisputed). He was also an investigator for the Office of Professional Standards and received gender-specific training. *Id.* at UMF 3, Doc. 104, Ex. 1 at 10:19-25. Defendant Gonzales had supervisory authority over Defendant Joseph Martinez and worked the same shift as him. Doc. 104 at 8, UMF 4; Doc. 108 at 5 (undisputed).

Defendant Martinez was assigned to the maintenance department at SCC, worked throughout the entire facility, and had inmates working for him. Doc. 104 at 8, UMF 5; Doc. 108 at 5 (undisputed).

As part of his duties as Chief of Security between 2017 and 2018, Defendant Gonzales was responsible for doing weekly round on the SCC facility grounds, including the maintenance area. Doc. 104 at 9, UMF 6; Doc. 108 at 5 (undisputed).

Plaintiff was transferred to Springer Correctional Center ("SCC") in February 2017. Doc. 101 at 2, UMF 1. Plaintiff was first incarcerated in 2002. She arrived at SCC with a long disciplinary history that included disobeying lawful orders and being present in unauthorized areas. Doc. 101 at 3, UMF 2, 3. In the five years prior to her transfer to SCC, Plaintiff accrued six different disciplinary convictions for sexual misconduct, seven disciplinary convictions for being in an unauthorized or restricted rea, and eighteen convictions for disobeying either lawful orders or rules and regulations. Doc. 101 at 3, UMF 4.

Plaintiff asserts she was sexually assaulted for the first time by Defendant Martinez in May 2017, when he raped her near the boiler room. Doc. 101 at 3, UMF 6. Subsequently, Defendant Martinez placed a piece of suboxone in her eye. Doc. 101 at 3 UMF 7. Plaintiff asserts she became addicted to suboxone. Doc. 101 at 3, UMF 8. Defendant Martinez continued to give her suboxone. Doc. 101 at 4, UMF 10. Defendant Martinez sexually assaulted her the second time a couple weeks later. Doc. 101 at 4, UMF 11.

Sometime in June or July 2017, Plaintiff told Defendant Gonzales that she was being sexually assaulted by Defendant Joseph Martinez. Doc. 104 at 9, UMF 8, *citing* 122:24-25, 123:1-19, 124:23-25, 125:1-24, 126:6-9, 126:16-24. In 2017, during a shakedown, Defendant Gonzales became aware that Plaintiff had lingerie in her possession that had been given to her by Defendant Martinez. Doc. 104 at 9, UMF 9; Doc. 108 at 5 (undisputed). Despite knowing this, Defendant Gonzales did not submit a "serious incident report", though facility administrators are required to do so when there is an incident of misconduct. Doc. 104 at 9, UMF 10, *citing* Doc. 104, Ex. 1 at

39:22-24; Ex. 5 at 75:20-22. Defendant Martinez was not placed on administrative leave or restricted from having access to Plaintiff.  Doc. 104 at 9, UMF 12, *citing* Ex. 1 at 41:14-19, Ex. 2 at 140:16-24.  Defendant Gonzales failed to investigate Defendant Martinez' sexual assault of Plaintiff.  Doc. 104 at 10, UMF 13.

Plaintiff told Defendant Gonzales numerous times that she was being sexually assaulted by Defendant Martinez, but Defendant Gonzales did nothing in response to the reports.  Doc. 104 at 9, UMF 11, *citing* Doc. 104, Ex. 2 at 125:6-20.

In October 2017, Plaintiff submitted a grievance form to Defendant Ebeth Cruz-Martinez notifying her that she was being sexually assaulted by Defendant Martinez beginning in May 2017.  Doc. 104 at 10, UMF 14.  Defendant Gonzales was aware that Defendant Martinez was sexually assaulting plaintiff before plaintiff submitted the grievance form.  Doc. 104 at 10, UMF 15, *citing* Doc. 104, Ex. 2 at 137:13-21.

The sexual assaults against Plaintiff by Defendant Martinez continued from May 2017 through June 2018, occurring approximately three times per month. Doc. 104 at 10, UMF 16; Doc. 108 at 5 (undisputed).

In January 2018, Defendant Gonzales reported an apparent sexual relationship between Defendant Martinez and another inmate.  Doc. 101, Ex. 5.  The report did not reference Plaintiff and did not mention that a sexual assault or rape had occurred.  *Id.*

Defendant Vigil and facility administrators, including Defendant Gonzales, did not contact the Office of Professional Standards and New Mexico state police about Defendant Martinez sexually assaulting Plaintiff until July 27, 2018, when facility administrators received a notice of tort claims from Plaintiff's counsel.  Doc. 104 at 10, UMF 18; Doc. 108 at 5 (undisputed).  On July

27, 2018, Plaintiff told Defendant Gonzales that Defendant Martinez had been giving her suboxone to remain quiet.  Doc. 104 at 10, UMF 19.

Three days after Defendant Gonzales was made aware of the notice of tort claims submitted to jail administration by Plaintiff's counsel, he had an argument with Plaintiff and ordered that she be placed in a holding cell for a few hours.  Doc. 104 at 11, UMF 20; Doc. 101 at 6, UMF 31, 32. Plaintiff was given a drug urinalysis test.  Doc. 104 at 11, UMF 21.  Plaintiff tested positive for suboxone.  Doc. 101 at 6, UMF 28.  Defendant Gonzales wrote a misconduct report charging Plaintiff with possession or use of dangerous drugs.  Doc. 101 at 6, UMF 29, *citing* Doc. 101 Ex. 10.  Plaintiff was found guilty of the charge and sanctioned with 30 days loss of good time credit, suspended.  Doc. 101 at 6, UMF 30.

While in the holding cell, Plaintiff requested to speak to the warden.  Doc. 101 at 7, UMF 33.  Plaintiff yelled and swore at Officer Darras.  Doc. 101 at 7 UMF 34.  Officer Darras wrote Plaintiff up for verbal abuse or gestures.  Doc. 101 at 7, UMF 35.  Officer Darras asked for the disciplinary charge to be dismissed as he and Plaintiff were "working [the] incident out."  Doc. 101 at 7, UMF 36.  Plaintiff's disciplinary charge was not dismissed, and the finding on her inmate disciplinary record is listed as guilty.  Doc. 101 at 7, UMF 37.

Plaintiff was written up for bartering after she received a potato chip from another inmate. Doc. 104 at 11, UMF 24.

Defendant Martinez resigned from SCC on July 19, 2018.

## DISCUSSION

### I.     <u>Defendant Gonzales violated Plaintiff's Eighth Amendment right to be free from deliberate indifference to a substantial risk of serious harm</u>.

6

### A.      Qualified immunity standard.

Defendant Gonzales has asserted the defense of qualified immunity, which shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

When a defendant moves for summary judgment on the basis of qualified immunity, the plaintiff bears a heavy two-fold burden.  *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001); *Romero v. Story*, 672 F.3d 880, 884 (10th Cir. 2012).  The plaintiff must put forward evidence showing that (1) "the defendant's actions violated a constitutional…right," and (2) "the right at issue was clearly established at the time of the defendant's unlawful conduct." *See Medina*, 252 F.3d at 1128 (internal quotations omitted); *Davis v. Clifford*, 825 F.3d 1131, 1135 (10th Cir. 2016).  "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Medina*, 252 F.3d at 1128.

In determining whether the plaintiff meets this burden, the Court ordinarily accepts the plaintiff's version of the facts—"that is, the facts alleged." *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018) (internal quotations omitted).  However, at the summary judgment phase of the litigation, "the plaintiff's version of the facts must find support in the record." *Id.* (internal quotations omitted).  "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000) (internal quotations omitted).

Plaintiff's constitutional claims are asserted pursuant to 42 U.S.C. § 1983, the "remedial vehicle for raising claims based on the violation of [federal] constitutional rights." *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016). "A cause of action under section 1983 requires the deprivation of a civil right by a 'person' acting under color of state law." *McLaughlin v. Bd. of Trustees*, 215 F.3d 1168, 1172 (10th Cir. 2000). The plaintiff must allege that each government official, through the official's own individual actions, has personally violated the Constitution. *See Trask v. Franco,* 446 F.3d 1036, 1046 (10th Cir. 1998). There must also be a connection between the official conduct and the constitutional violation. *Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask,* 446 F.3d at 1046.

### B.   Defendant Gonzales was deliberately indifferent to a substantial risk of serious harm.

Plaintiff asserts that Defendant Gonzales violated the Eighth Amendment by being deliberately indifferent to a substantial risk of serious harm to her.  She asserts that (1) she told Defendant Gonzales that Defendant Martinez was sexually assaulting her and (2) Defendant Gonzales took no action or did not respond reasonably. A state prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment, as applied to the states via the Fourteenth Amendment. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 344–45 (1981).  Moreover, "an inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards." *Hovater v. Robinson,* 1 F.3d 1063, 1068 (10th Cir. 1993).

Viewing the facts in the light most favorable to Plaintiff, she has created a genuine dispute that Defendant Gonzales was deliberately indifferent to a substantial risk of serious harm to her. She asserts that she first told Defendant Gonzales in June or July 2017 that Defendant Martinez

8

sexually assaulted her. Nevertheless, despite reporting the sexual assaults, she asserts that Defendant Gonzales did not take any action to protect her. Of course, Defendant Gonzales takes a very different view of the facts. He asserts that he did not know Plaintiff was sexually assaulted. But based on the record before the Court, the Court finds that a reasonable jury could find the facts as Plaintiff has presented them.

A cognizable Eighth Amendment claim contains an objective component (i.e., the inmate is incarcerated under conditions posing a substantial risk of serious harm) and a subjective component (i.e., the prison official was deliberately indifferent to the inmate's safety). *See Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003). In order to meet the subjective component, the prison official must know of and disregard a substantial risk of serious harm. *Farmer*, 511 U.S. at 837. Further, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must also draw the inference. *Id.* Applying *Farmer*, the Tenth Circuit has created a three-part framework for the deliberate indifference standard: (1) the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) the official must actually draw that inference, and (3) the official must be aware of and fail to take reasonable steps to alleviate that risk. *See Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018).

Moreover, in order to successfully assert a § 1983 claim under the Eighth Amendment, a plaintiff must show a specific defendant's personal involvement or participation in the incident. *See Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996) (supervisory status alone is insufficient to assert a § 1983 claim; personal involvement is required) (citing *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996); *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim.").

"A plaintiff can meet her burden under the objective component by showing the harm she suffered was sufficiently serious." *Castillo v. Day*, 790 F.3d 1013, 1020–21 (10th Cir. 2015). Here, it is undisputed that Plaintiff's asserted harm – repeated sexual assault, *i.e.*, rape - is sufficiently serious. *See Castillo v. Day*, 790 F.3d 1013, 1018–19 (10th Cir. 2015) (sexual assault of inmate by guard is a violation of Eighth Amendment); *Smith v. Cochran,* 339 F.3d 1205, 1212 (10th Cir.2003) (holding an inmate's allegations of rape satisfy the objective component of an Eighth Amendment excessive force claim because "[s]exual abuse is repugnant to contemporary standards of decency"). Here, a reasonable jury could conclude that Plaintiff was repeatedly sexually assaulted. Defendant does not argue otherwise. Therefore, a reasonable jury could find the objective component satisfied.

Rather, at issue appears to be the subjective prong. "To prevail on the subjective component, the prisoner must show that the defendant[ ] knew [the prisoner] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan,* 471 F.3d at 1159 (quotation omitted), *quoted in Castillo v. Day*, 790 F.3d 1013, 1021 (10th Cir. 2015). Notably, "[d]eliberate indifference does not require a finding of express intent to harm." *Mitchell v. Maynard*, 80 F.3d 1433, 1442 (10th Cir. 1996). Accordingly, a plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842.

The Court finds that a reasonable jury could find as follows:

- Beginning around May 2017, Plaintiff was repeatedly sexually assaulted by Defendant Martinez. Plaintiff did not consent, and she was raped. Doc. 104, Ex. 2 at 94-96.
- In June or July 2017, Plaintiff expressly told Defendant Gonzales that Defendant Martinez was sexually assaulting her. *See* Doc. 104, Ex. 2 at 100:1-14; 122:24-25; 123:1-19; 124:23-25, 125:1-24, 126:6-9, 126:16-24. At this time, Defendant Gonzales knew that Defendant

Martinez was sexually assaulting Plaintiff. *Id.* Plaintiff repeatedly told Defendant Gonzales she was being sexually assaulted.  Doc. 104 at PUMF 11, *citing* Ex. 2 at 126:16-20.

- Defendant Gonzales took no action following Plaintiff's reporting of the alleged assault. Doc. 104, Ex. 2 at 125:6-20, 127:5-25, 128:1-8, 140:16-24.  Defendant Gonzales did not report Defendant Martinez' sexual assault of Plaintiff. *Id.*;
- Defendant Martinez continued to sexually assault Plaintiff at least 3 times a month;
- Defendant Gonzales knew that lingerie was seized from Plaintiff and that Defendant Martinez gave it to her, and Defendant Gonzales did not report that incident. Doc. 104, Ex. 2 at. 126:16-24; and
- Defendant Gonzales was aware that Defendant Martinez was having an alleged sexual relationship with inmates in the maintenance area.   Doc. 101, Ex. 5.

Based on the above (and other) facts, a reasonable jury could conclude that Defendant Gonzales was deliberately indifferent to a substantial risk of serious harm to Plaintiff, as follows:

- Defendant Gonzales knew that Plaintiff faced a substantial risk of harm, in part because Plaintiff told him multiple times that Defendant Martinez sexually assaulted her; and

- Defendant Gonzales did not take *any* measures to abate the substantial risk of harm, and did not reasonably respond.

Defendant Gonzales primarily argues that he did not know that Plaintiff was sexually assaulted. As explained above, the Court finds that a reasonable jury could conclude that Plaintiff told Defendant Gonzales that Defendant Martinez was sexually assaulting her.

To the extent Defendant Gonzales asserts he responded reasonably by reporting Defendant Martinez for a sexual relationship with another inmate in January 2018, the Court disagrees.  There is no justification presented for the approximate six-month delay in reporting the sexual assault. Moreover, the January 2018 report did not appear to reference sexual assault or Plaintiff.  As Defendant argues, this report had nothing to do with Plaintiff.  *See, e.g.,* Doc. 101 at 5, UMF 20, 22 *citing* Doc. 101, Ex. 5. The report had to do with his suspicion that Defendant Martinez was having a sexual "relationship" with a different inmate.  Doc. 101, Ex. 5.  A reasonable jury could conclude that this response was inadequate and not reasonable.

11

Defendant asserts that the Court should not consider Plaintiff's deposition testimony in which she describes telling Defendant Gonzales that Defendant Martinez sexually assaulted her. Defendant asserts that testimony is "vague, nonspecific testimony" which was "insufficient on its own to create a genuine issue of material fact." *Harvey v.* Baker, 242 Fed. Appx. 547, 551 (10th Cir. 2007 (unpublished).   The Court disagrees, and concludes that based on her deposition testimony, a reasonable jury could conclude that she told Defendant Gonzales that Defendant Martinez was sexually assaulting her.

Defendant appears to assert that Plaintiff "blatantly contradicted" herself in her deposition testimony, and therefore her deposition testimony regarding whether she told Defendant Gonzales about the sexual assaults should be ignored. The Court disagrees. Generally, for qualified immunity analysis the Court adopts Plaintiff's properly supported version of the facts, unless it is "blatantly contradicted by the record." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009)("'[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]'"). Defendant asserts that Plaintiff stated in her deposition testimony that "I didn't just come out with it. Captain Gonzales apparently already knew that something was taking place, " which Defendant believes contradicts her other deposition testimony that she expressly told Defendant Gonzales she was sexually assaulted. *See* Doc. 104, Ex. 2 at 100:11-14; *Id.* at 137:13-21; 127:5-25; 126:6-9; 125:1-24.  Initially, the Court notes that Defendant has not cited to cases in which the Tenth Circuit disregarded deposition testimony because it contained two allegedly conflicting deposition statements.  *See Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1165 (10th Cir. 2021) (discussing scope of blatant-contradiction exception in Tenth Circuit). Therefore, it is unclear whether the "blatant contradiction" exception applies here.  Alternatively, the Court

finds the testimony "I didn't just come out with it" is ambiguous, as in context it could refer to why she didn't report the sexual assault to Defendant Gonzales earlier, but waited a month to tell him.  Doc. 104, Ex. 2 at 100:11-14. This statement does not blatantly contradict Plaintiff's other testimony in the deposition that she expressly told Defendant Gonzales she was sexually assaulted. Because the statement is ambiguous, the Court finds that it does not "blatantly" contradict her other clear testimony in which she says she told Defendant Gonzales that she was being sexually assaulted by Defendant Martinez.  Elsewhere, she clearly states in her deposition testimony that she told Defendant Gonzales she was sexually assaulted. In sum, a reasonable jury could find that Plaintiff told Defendant Gonzales that she was being sexually assaulted by Defendant Martinez.

**C.      Defendant Gonzales would also be liable under a supervisory theory.**

The parties apply a § 1983 supervisory liability standard in analyzing whether Defendant violated the Eighth Amendment.  However, under Plaintiff's version of the facts explained above, the Court believes that Plaintiff has created a genuine dispute that Defendant Gonzales was deliberately indifferent to a substantial risk of serious harm to Plaintiff.  Therefore, the Court believes it need not apply any supervisory liability theory or test. As noted above, the factual assertions suggest that Defendant Gonzales was personally deliberately indifferent to a substantial risk of harm to Plaintiff. Alternatively, the Court would find that Plaintiff has created a genuine dispute of material fact that Defendant Gonzales violated the Eighth Amendment under a supervisory liability theory.

"A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability." *Brown*, 662 F.3d at 1163.  "Personal liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  *Id.* (internal quotations omitted).  "Supervisory liability allows a plaintiff to impose liability upon a defendant-supervisor

who creates, promulgates, or implements a policy which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution." *Id.* (internal quotations and alterations omitted).

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Where a plaintiff alleges a § 1983 action against a government agent in their individual-capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* To put it simply, personal liability under § 1983 "must be based on [a defendant's] personal involvement" in a constitutional violation, "and supervisory liability must be based on [a defendant's] Policy." *Brown*, 662 F.3d at 1164–65. Thus, Plaintiff must show an "affirmative link" between Defendant Gonzales and the constitutional violations through the following elements: (1) personal involvement; (2) causation, and (3) state of mind. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013); *Keith v. Koerner*, 843 F.3d 833, 837 (10th Cir. 2016).

For the reasons explained above, Plaintiff has shown an affirmative link between Defendant Gonzales and the Eighth Amendment violation. Defendant Gonzales was personally involved in the constitutional violation, as Plaintiff expressly told him she was being sexually assaulted by Defendant Martinez. He had the requisite state of mind, deliberate indifference, as he knew there was a substantial risk of serious harm to Plaintiff, but took no action. Plaintiff has also established causation. She has established that she was sexually assaulted by Defendant Martinez, that she told Defendant Gonzales, and she was subsequently sexually assaulted. Doc. 104, Ex. 2 at 122:24-25, 123:1-19, 124:23-25, 125:1-24; 126:6-9; 126:16-24.

14

## II.   **It was clearly established that ignoring Plaintiff's reports of sexual assault violated the Eighth Amendment.**

Moreover, considering Plaintiff's version of the facts, the Court finds that Plaintiff's right to be free from deliberate indifference to a substantial risk of serious harm in violation of Eighth Amendment was clearly established.  "A right is clearly established only if reasonable officers would understand that their conduct violates the Constitution." *Craft v. White*, 840 F. App'x 372, 375 (10th Cir. 2021), *citing Mocek v. City of Albuquerque*, 813 F.3d 912, 922 (10th Cir. 2015). "We do not define clearly established law at a general level, for a constitutional right is clearly established only if there is an on-point Tenth Circuit opinion, Supreme Court precedent, or a clear weight of authority from other courts." *Id.* Though "a case directly on point" is not required, "existing precedent must have placed the constitutional question regarding the illegality of the defendant's conduct beyond debate." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.), *cert. denied sub nom. Cummings v. Bussey*, ⎯⎯ U.S. ⎯⎯, 140 S. Ct. 81, 205 L.Ed.2d 27 (2019).

"[I]t is clearly established that a prison official's deliberate indifference to sexual abuse by prison employees violates the Eighth Amendment." *Keith v. Koerner,* 707 F.3d 1185, 1188 (10th Cir. 2013). Because "a prison official's failure to protect an inmate from a known harm may constitute a constitutional violation," the Tenth Circuit has further held it to be clearly established that inmates possess "a constitutional right to expect" that jail officials will "reasonabl[y] protect[]" them from such abuse. *Keith II*, 843 F.3d at 850 (quotation and citation omitted), *quoted in Poore v. Glanz*, 724 F. App'x 635, 642 (10th Cir. 2018).

Here, there are multiple published Tenth Circuit cases which would place the constitutional question beyond debate, and the law was sufficiently clear that every reasonable official would have understood that he was violating that right.  Here, under Plaintiff's version of the facts, (1)

she repeatedly told Defendant Gonzales that she was being sexually assaulted[1] by Defendant Martinez, a prison employee, (2) Defendant Gonzales took no action, and (3) Plaintiff continued to be sexually assaulted by that prison employee. She first reported the assault in June or July 2017. No action was taken at all on Plaintiff's behalf, or if action was taken, it occurred more than six months later in January 2018. Even assuming Defendant Martinez was investigated in January 2018 for sexual "relationships" with other inmates, the record does not reflect that any action was taken in January 2018 to investigate or prevent Defendant Martinez from continuing to assault Plaintiff. Here, it is clearly established that Defendant's Gonzales' deliberate indifference to the repeated sexual assaults of Plaintiff violated her Eighth Amendment right to be free from deliberate indifference to a substantial risk of serious harm. A selection of those cases clearly establishing that right prior to July 2017 are below.

In *Castillo v. Day*, an inmate was sexually abused by prison employees. Although she reported the abuse, the defendant took no action, and the abuse continued. *Castillo v. Day*, 790 F.3d 1013, 1020 (10th Cir. 2015). The Tenth Circuit found that the defendant was deliberately indifferent in violation of the Eighth Amendment, reasoning that "a prison guard's failure to take reasonable steps to protect an inmate from a known risk of sexual abuse by another prison guard can be a violation of the Eighth Amendment." *Id.*

In *Berry,* the Tenth Circuit held a corrections officer was deliberately indifferent in violation of the Eighth Amendment when he took no action upon learning of the potential threat posed to an inmate by his co-defendants. *Berry v. City of Muskogee*, 900 F.2d 1489 (10th Cir. 1990).

---

[1] To the extent Defendant Gonzales may argue that the phrase "sexual assault" is ambiguous, the Court finds that Plaintiff was generally referring to rape, although other forms of sexual abuse also occurred. Doc. 104, Ex. 2 at 95:21-23; 126:6-9; 127:16-25.

In *Howard*, the Tenth Circuit found deliberate indifference where members of the same prison gang which previously sexually abused the plaintiff had begun to threaten him again. *Howard v. Waide*, 534 F.3d 1227, 1238 (10th Cir. 2008). The inmate was sexually abused three times before officers acted on his request to be relocated. *Id.*

In *Keith II,* the Tenth Circuit found a violation of clearly established Eighth Amendment law where defendants inadequately investigated alleged sexual misconduct allegations against officers. *Keith v. Koerner*, 843 F.3d 833, 850 (10th Cir. 2016). Similarly here, Plaintiff has established that she told Defendant Gonzales that Defendant Martinez was sexually assaulting her, and he took no action.

In *Tafoya*, the defendant knew about previous sexual assaults on female inmates by male detention officers. The Tenth Circuit found the evidence sufficient to demonstrate deliberate indifference in violation of the Eighth Amendment. *Tafoya v. Salazar*, 516 F.3d 912, 919 (10th Cir. 2008).

Similarly, in *Gonzales v. Martinez*, the defendant was advised that two female inmates accused two jailers of sexually assaulting them. The defendant took no action to remove them from the custody of their abusers. *Gonzales v. Martinez*, 403 F.3d 1179, 1187 (10th Cir. 2005). The Tenth Circuit found the defendant was deliberately indifferent in violation of the Eighth Amendment. *Id.*

The Court concludes these cases are factually on point and place the relevant law beyond debate. Alternatively, even assuming these cases were not exactly factually identical to this case, the Court finds that conduct in this case, based on Plaintiff's version of the facts, is so egregious that even general precedent applies with obvious clarity. *Ullery v. Bradley*, 949 F.3d 1282, 1291–92 (10th Cir. 2020) ("But when a public official's conduct is so egregious even a general precedent

applies with 'obvious clarity," the right can be clearly established notwithstanding the absence of binding authority involving materially similar facts."), *citing Hope*, 536 U.S. at 741, 122 S.Ct. 2508 (stating defendants "can still be on notice that their conduct violates established law even in novel factual circumstances," so long as the law provided "fair warning" their conduct was unconstitutional); *see also Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th 2015) (Gorsuch, J.) ("After all, some things are so obviously unlawful that they don't require detailed explanation ....").

Therefore, the Court concludes that Plaintiff's Eight Amendment right to be free from deliberately indifference to substantial risk of serious harm was clearly established.

## III. **Defendant Gonzales is entitled to qualified immunity as to the First Amendment retaliation claim.**

### A. **Plaintiff has not shown a violation of the First Amendment.**

Plaintiff asserts that Defendant Gonzales retaliated against her after she filed a grievance, violating the First Amendment.

"It is well-settled that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of [her] right of access to the courts." *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (brackets and quotation marks omitted). Moreover, officials may not retaliate against prisoners for filing grievances. *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991); *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (the filing of prison grievances is constitutionally protected activity). In order to state a First Amendment retaliation claim, Plaintiff must show:

> (1) that [she] was engaged in constitutionally protected activity; (2) that the defendant's actions caused [her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the

defendant's adverse action was substantially motivated as a response to [her] exercise of constitutionally protected conduct.

*Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018).  Here, it appears to be undisputed that

Plaintiff was engaged in a protected activity. At issue are the second and third elements.

Plaintiff's entire argument opposing summary judgment on the First Amendment claim is

as follows:

> In this case, there are numerous facts in dispute regarding Defendant Gonzales' retaliatory conduct once Plaintiff exercised her right to report to her attorney and to the state police that she was the victim of sexual abuse by Defendant Martinez. (Exhibit 2, pp. 74:6-15; 149:2-16; 164:14-25; 231:19-23; 235:23-25; 236:10-12; 150:18- 25; 151:1-4;157:15-25; 158:1-11; 159:6-14; Exhibit 1, pp. 89:14-24).
>
> Contrary to Gonzales' arguments, it was not just a matter of the SCC taking justified disciplinary action against plaintiff. There are facts in the record that support a retaliation claim against movant as he ordered his staff to take retaliatory action against plaintiff after she reported the sexual assault outside of the facility and action had to be taken at that time. *Id.* Accordingly, movant is not entitled to summary judgment on plaintiff's First Amendment claim.

Doc. 104 at 24-25.

Plaintiff appears to admit that some disciplinary actions taken by Defendant Gonzales for

violations of prison rules were justified, and therefore are not a basis for a First Amendment

retaliation claim.  *See* Doc. 104 at 25.  A "prisoner cannot maintain a retaliation claim when [she]

is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary

report and there is evidence to sustain the conviction." *Requena v. Roberts*, 893 F.3d 1195, 1211

(10th Cir. 2018), *quoting O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011) (per curiam);

*see also Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008) ("However, claims of retaliation

fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule.

Thus, a defendant may successfully defend a retaliatory discipline claim by showing 'some

evidence' the inmate actually committed a rule violation." (citations omitted) ); *Lopez v. Roark*,

637 F. App'x 520, 521 (10th Cir. 2016) (unpublished) (relying on *O'Bryant* to reject inmate's retaliation claim); *Pinson v. Berkebile*, 576 F. App'x 710, 713 (10th Cir. 2014) (unpublished) (same). Here, as Defendant argues, Officer Darras reported Plaintiff in the misconduct report for abusive language and gestures, which Plaintiff does not dispute. Doc. 101, UMF 32-35; Doc. 104 at 7 (undisputed). It is undisputed that Plaintiff was found guilty of these charges. Doc. 101, UMF 37. Plaintiff was also found guilty of using and possessing drugs. *See* Doc. 101, UMF 27-30; Doc. 104 at 7 (undisputed). Rather, Plaintiff appears to assert that she was retaliated against as follows:

- Defendant Gonzales had an argument with Plaintiff and ordered that she be placed in a holding or segregation cell for a few hours. Doc. 104, UMF 20, *citing Exhibit* 2, pp. 149:2-16; 164:14-25; 231:19-23; 235:23-25; 236:10-12; Exhibit 1, pp. 89:14-24); Doc. 101 at UMF 32 (plaintiff was in holding cell for a few hours), Doc. 104 at 7 (undisputed)
- A urinalysis was conducted on Defendant, which tested positive. Doc. 104, UMF 21; Doc. 101, UMF 27, 28.
- In August 2018, Defendant Gonzales allegedly ordered that Plaintiff be written up for bartering after she received a potato chip from another inmate. Doc. 104, UMF 23, *citing* Ex. 2, 149:25, 150:1-16.
- At the end of July 2018, Plaintiff was "shaken down" by correctional officers approximately five times. (Exhibit 2, pp. 157:15-25; 158:1-11; 159:6-14)

Whether analyzed together or separately, the Court finds these factual assertions insufficient to overcome qualified immunity on the First Amendment retaliation claim. As explained below, some of these asserted facts are not supported by admissible and non-speculative evidence. Some of the alleged retaliatory acts would not chill a person of ordinary firmness, or Plaintiff did not show that the disciplinary actions were substantially motivated as a response to her constitutionally protected conduct. Finally, Plaintiff has not argued or cited to any cases showing that these alleged retaliatory acts violated clearly established law. Therefore, Defendant Gonzales is entitled to qualified immunity.

Plaintiff asserts that Defendant Gonzales placed her in segregation for a few hours. Doc. 101 at UMF 32 (plaintiff was in holding cell for a few hours), Doc. 104 at 7 (undisputed). Plaintiff

has not cited to any case holding that placement in segregation for a few hours is sufficient to chill a person of ordinary firmness from continuing to engage in that activity. *See, e.g., Requena v. Roberts*, 893 F.3d 1195, 1211–12 (10th Cir. 2018) (harassing plaintiff while in segregation all night does not constitute adverse action sufficient to support retaliation claim). Although the Court independently identified some cases which have held that *long term* isolation may chill a person of ordinary firmness, Plaintiff has not shown or argued that segregation "for a few hours" is comparable to "long term isolation". *See, e.g., Fogle v. Pierson,* 435 F.3d 1252, 1263–64 (10th Cir.2006) (transfer to long-term administrative segregation at another prison); *see also Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (prisoners placed indefinitely in administrative segregation if they were not assigned to a program or job). Moreover, Plaintiff has not described the conditions in which she was placed. *See, e.g., Shields v. Cline*, 829 F. App'x 321, 325 (10th Cir. 2020) ("However, Shields does not demonstrate that he suffered from a retaliatory action sufficient to chill an ordinary person from exercising his constitutional rights. He states that he was moved from his current cell to a "more restrictive" cellhouse but does not provide any further detail about the additional restrictions. This allegation, without more, is not enough to allege sufficient harm to state a First Amendment retaliation claim."). Generally, "an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because [she] has engaged in protected activity." *Strope v. Cummings,* 381 Fed.Appx. 878, 883 (10th Cir. 2000); *see also Poole v. County of Otero,* 271 F.3d 955, 961 (10th Cir.2001) *abrogated on other grds,* 547 U.S. 250 (2006) ("prisoners may be required to tolerate more than [other citizens] ... before a [retaliatory] action taken against them is considered adverse"). Finally, Plaintiff has not cited to any cases suggesting that placement in isolation "for a few hours" under these circumstances violates clearly established First Amendment law.

As Defendant Gonzales argues, the admissible evidence in the record does not support Plaintiff's assertion that Defendant Gonzales ordered that she be written up for bartering a potato chip. Plaintiff cites to her own deposition testimony, but that testimony appears to be merely speculative that it was Defendant Gonzales who ordered Plaintiff to be written up. Doc. 104, Ex. 2 at 150:12-25, 151:1-4. Moreover, Plaintiff's statements appear to rely on hearsay. Plaintiff testified to the statements of an unidentified officer who told her that Defendant Gonzales ordered she be written up. The unidentified officer's statements appears to be inadmissible hearsay. *See* Doc. 108 at 8. Plaintiff has not established facts suggesting that any of the party-opponent exceptions applies here. *See* Fed. R. Evid. 801(d)(2); 805. Moreover, Plaintiff has not shown that the write up would (1) chill a person of ordinary firmness from continuing to engage in protected activities, or (2) was substantially motivated by Plaintiff's protected activity. Alternatively, Plaintiff has not cited to any cases showing that the write up violated clearly established law.

Moreover, Plaintiff asserts that she was "shaken down" five times by correctional officers, citing to her deposition testimony. First, she testified that the officers searching her told her to talk to Gonzales or Vigil. This does not suggest that Defendant Gonzales ordered the shakedowns. Whether Defendant Gonzales ordered the shakedowns was merely speculative. Moreover, her deposition testimony relaying the statements of officers appears to be inadmissible hearsay. Finally, Plaintiff does not argue or show that the strip searches violated prison policy, or were not related to a legitimate penological interests. *Leek v. Miller*, 698 F. App'x 922, 926 (10th Cir. 2017) ("He also made no allegation that the strip searches and the searches of his personal property were unusual when a prisoner was transferred. Indeed, he did not allege that he was strip searched in retaliation for his protected activity. And strip searches of prisoners are not per se prohibited."), *citing Farmer v. Perrill*, 288 F.3d 1254, 1260 (10th Cir. 2002) (recognizing that prisoner strip

searches must be "reasonably related to a legitimate penological interest" (emphasis omitted)). The record is unclear when exactly she was searched, but Plaintiff had tested positive for suboxone in late July 2018. Doc. 101, UMF 28, *citing* Doc. 101, Ex. 9. Finally, Plaintiff does not cite to any cases showing that the strip searches violated clearly established law under the circumstances of this case.

While in segregation, Plaintiff was given a urinalysis test and tested positive for suboxone. Plaintiff has not shown by admissible evidence that Defendant Gonzales ordered that the urinalysis be performed. Rather, Plaintiff only cites to her own deposition testimony in which she appears to speculate he ordered the urinalysis. *See* Doc. 108 at 7, ¶ 21, *citing* doc. 104, Ex. 2, 239:17-20 (Plaintiff testifying that it was "just something that Captain Gonzales requested."). Plaintiff has not asserted that a urinalysis test would chill a person of ordinary firmness, or that the urinalysis was unjustified or against policy. Finally, Plaintiff has not cited to any law showing that giving a urinalysis test violates clearly established law under the circumstances.

Moreover, Plaintiff does not show that Defendant Gonzales' acts were substantially motivated by retaliatory animus. As explained above, Plaintiff's statements that Defendant Gonzales ordered the retaliatory acts are (1) based on speculation or (2) hearsay. Temporality alone is generally insufficient to support a finding that the actions were substantially motivated by her protected activity. *Friedman v. Kennard*, 248 F. App'x 918, 922 (10th Cir. 2007) (unpublished) ("Standing alone and without supporting factual allegations, temporal proximity between an alleged exercise of one's right of access to the courts and some form of jailhouse discipline does not constitute sufficient circumstantial proof of retaliatory motive to state a claim.").

Finally, as explained below, although Plaintiff also requests discovery under Rule 56(d), she does not appear to seek any discovery related to her First amendment claim.

Therefore, the Court concludes that Defendant Gonzales is entitled to qualified immunity as to the First Amendment claim (Count II).

**B.**     **Plaintiff has not shown that Defendant Gonzales violated clearly established First Amendment retaliation law.**

Plaintiff has also not shown that Defendant Gonzales violated clearly established First Amendment law. Plaintiff acknowledged that Defendant Gonzales raised qualified immunity in his summary judgment motion.  Therefore, Plaintiff bears the burden of showing a violation of clearly established law. *See* Doc. 104 at 14 (acknowledging that Defendant Gonzales seeks summary judgment "on the basis of qualified immunity."); *Henderson v. Glanz*, 813 F.3d 938, 952 n.10 (10th Cir. 2015) (plaintiff has burden under qualified immunity to show violation of clearly established law, even when defendant does not expressly discuss clearly established law); *see also Hunt v. Montano*, 39 F.4th 1270, 1284–85 (10th Cir. 2022) (where defendant only cited to qualified immunity standard in district court and did not argue the clearly established prong in district court, plaintiff still had burden to show violation of clearly established law).

Once an individual defendant asserts qualified immunity, "the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Estate of Booker*, 745 F.3d at 411 (quotations omitted), *quoted in Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016).

Generally, Plaintiff bears the burden of citing to individual cases which demonstrate the asserted law is clearly established. *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law."); *Roska ex rel. Roska v. Sneddon*, 437 F.3d 964, 971 (10th Cir. 2006) ("When a defendant raises a claim

of qualified immunity, the burden shifts to the plaintiff to show the defendant is not entitled to immunity."); *see also Gutierrez v. Cobos*, 841 F.3d 895, 903 (10th Cir. 2016) ("Plaintiffs failed to carry their burden of showing that [the defendants] violated clearly established federal law because [they] did not make any legal argument in the district court to rebut qualified immunity."); *Rojas v. Anderson*, 727 F.3d 1000, 1004 (10th Cir. 2013); *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013) ("[The plaintiff], through his counsel, failed to carry the burden assigned him by law.").

Here, Plaintiff did not argue that Defendant violated clearly established law.  *See* Doc. 104 at 24-25. Moreover, Plaintiff has not cited to any case holding that Defendant Gonzales violated her clearly established First Amendment rights.  Therefore, the Court finds that Plaintiff has not carried her burden. *Estate of Booker*, 745 F.3d at 411 (when a defendant moves for summary judgment based on qualified immunity, a plaintiff must show a violation of clearly established law because, "[u]nlike most affirmative defenses," the plaintiff "bear[s] the ultimate burden of persuasion" to overcome qualified immunity); *see Roska ex rel. Roska v. Sneddon*, 437 F.3d 964, 971 (10th Cir. 2006) ("When a defendant raises a claim of qualified immunity, the burden shifts to the plaintiff to show the defendant is not entitled to immunity.").

**IV.    Plaintiff's Rule 56(d) discovery request is not well-taken.**

Plaintiff alternatively requests Rule 56(d) discovery for her Eighth Amendment claim in response to the motion for summary judgment.  "[B]ecause qualified immunity protects against the burdens of discovery as well as trial, a district court may stay discovery upon the filing of a dispositive motion based on qualified immunity." *Stonecipher v. Valles*, 759 F.3d 1134, 1148 (10th Cir.), *cert. denied*, 135 S. Ct. 881 (2014) (citing *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004)). However, Rule 56(d)(2) authorizes a Court to allow time to obtain discovery where the party opposing summary judgment shows that "it cannot present facts essential to justify

its opposition[.]" Fed. R. Civ. P. 56(d)(2). These facts must be presented in the form of an affidavit. *See* Fed. R. Civ. P. 56(d). While the affidavit "need not contain evidentiary facts, it must explain why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been taken to obtain these facts." *Price ex rel. Price v. Western Resources, Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (referring to Rule 56(f), which was recodified as Rule 56(d) by amendments effective December 1, 2010). "The nonmovant must also explain how additional time will enable [her] to rebut the movant's allegations of no genuine issue of material fact." *F.D.I.C. v. Arciero*, 741 F.3d 1111, 1116 (10th Cir. 2013) (quoting *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006)).

This burden is somewhat elevated in qualified immunity cases because officials have "a right, not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery." *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001) (quotations omitted). "Because 'the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery' ... there is a strong policy justification for staying discovery and for refusing requests for additional discovery once a defendant invokes qualified immunity as a defense." *Martin v. County of Santa Fe*, 626 Fed.Appx. 736, 740 (10th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

However, "[a]lthough an assertion of qualified immunity heightens the Rule 56(d) burden, 'limited discovery may sometimes be necessary before the district court can resolve a motion for summary judgment based on qualified immunity.' " *Gomez v. Martin*, 593 Fed.Appx. 756, 760–61 (10th Cir. 2014) (quoting *Crawford–El v. Britton*, 523 U.S. 574, 593 n.14 (1998)). "[T]he plaintiff bears the burden of demonstrating 'how such discovery will raise a genuine fact issue as

to the defendants' qualified immunity claim.' " *Martin*, 626 Fed.Appx. at 740 (quoting *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1387 (10th Cir. 1994)).

Plaintiff's Rule 56(d) request for discovery appears to be limited to her Eighth Amendment claim. Plaintiff did not appear to request Rule 56(d) discovery for the First Amendment claim, as none of the requested areas of inquiry for discovery appear to be relevant to her First Amendment claim.  She did not show "how additional time will enable [her] to rebut movant's allegations of no genuine issue of fact" as to the First Amendment claim. *Pasternak v. Lear Petroleum Expl., Inc.*, 790 F.2d 828, 833 (10th Cir. 1986).

Because Plaintiff created a genuine dispute of material fact as to the Eighth Amendment claim, the Court finds that her Rule 56(d) discovery request is moot.  Alternatively, her request should be denied because a response under Rule 56(d) is generally *alternative* to a response to summary judgment on the merits. *See Pasternak v. Lear Petroleum Expl., Inc.*, 790 F.2d 828, 833 (10th Cir. 1986) ("The protection afforded by Rule 56[d] is an *alternative* to a response in opposition to summary judgment under 56[c].") (emphasis in original).

## CONCLUSION

For the reasons stated above, Defendant Gonzales is not entitled to qualified immunity as to Plaintiff's Eighth Amendment claim (Count I) for deliberate indifference to a substantial risk of harm.  However, the Court will enter summary judgment in Defendant Gonzales' favor on the First Amendment retaliation claim (Count II), as he is entitled qualified immunity.

**IT IS THEREFORE ORDERED** that Defendant Gonzales' Motion for Summary Judgment **(Doc. 101)** is **GRANTED IN PART** and **DENIED IN PART.**

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE